SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Paul.Maloney@usdoj.gov
**JAMES A. KILCUP, OSB #173891**
James.Kilcup@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00292-IM** |
| **v.** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| **IAN JOSEPH McCARTHY,** | |
| **Defendant.** | |

The United States submits this response to defendant Ian Joseph McCarthy's Motion to Compel Discovery (ECF 29). Defendant moves the Court to compel the United States to produce documents that (a) the government has either already produced, (b) do not exist, or (c) are outside the possession, custody, or control of the prosecution team. For a limited set of documents, the government is continuing to gather information and will promptly supplement its production with any additional discoverable material. The defendant's requests have either been satisfied or will be in short order. As such, no order compelling the government is necessary.[1]

[1] The government notes that it filed a motion for discovery on May 22, 2026. (ECF 18). Defendant has yet to respond to that request, let alone produce responsive discovery.

## I. BACKGROUND

On July 4, 2025, defendant arrived at the Immigration and Customs Enforcement Building (ICE Building) in Southwest Portland, Oregon, with a backpack loaded with clothing, bolt cutters, a pry bar, and map with hand drawn markings corresponding with the locations of surveillance cameras. Defendant was observed and recorded by video surveillance using bolt cutters to cut an internet cable providing communication services to the ICE Building, and attempting to cut a lock from a magnetic keycard reader used to activate the gate to the building.

Law enforcement officers deployed from the building to locate and detain defendant. Defendant had retreated from federal property to a location across Bancroft Street. Based on real-time location descriptions provided by FPS Inspectors and the rooftop officers, two SRT Officers (Victim Officer 1 and Victim Officer 2) approached defendant. The officers identified themselves as police, told defendant to stop and put his hands behind his back. Defendant responded by raising his balled fists to face level and assumed a fighting stance.

The officers grabbed defendant to guide him to the ground to effect an arrest, at which point defendant began punching and kicking at the officers. Defendant struck Victim Officer 1 in the legs causing immediate pain. Multiple officers were necessary to restrain defendant and apply plastic handcuffs to his wrists. The officers were escorting defendant back to the ICE Building for processing when he broke loose and pulled free from the officers. The officers subdued defendant, placed metal handcuffs to his wrists, and resumed escorting him to the ICE Building.

Investigators later learned that the fiber optic cable providing internet service to the ICE Building had been severed.

On July 15, 2025, a grand jury in Portland, Oregon, returned a five count-indictment in this case. Defendant is alleged to have assaulted two federal officers (Counts 1 and 2), committed a depredation of government property (Count 3), damaged communication lines (Count 4), and escaped from custody (Count 5). On August 6, 2025, defendant was arraigned and a trial date was set.

To date, the government has produced three volumes of discovery. The initial volume was produced on August 7, 2025, and contains reports of investigation, witness statements, images and surveillance recordings from the night of the incident.

The government produced a second volume on August 21, 2026. This volume contains supplemental reports, witness statements, exhibits and reports related to defendant's 2021 protest related arrest, and a recording posted to social media documenting defendant's interactions with arresting officers.

On September 8, 2026, at the request of defendant's counsel, the government facilitated an in-person inspection of the ICE Building. At the same inspection, the government made items of physical evidence available for defense counsel's inspection.

On October 1, 2026, the government produced a third volume of discovery. The volume contains supplemental reports, attachments to previously produced reports, audio files with radio traffic by officers regarding defendant's activities near the ICE Building on July 4, 2025, and documentation regarding the government's communications with Comcast and property interests in the ICE building.

In total, the government has produced 1,328 bates-stamped pages of discovery. To date, defendant has not produced any discovery to the government.  Trial is set for December 1, 2026.

## II. LEGAL STANDARDS

Defendant's motion requests an order to compel discovery under Fed. R. Crim. P. 16. (ECF 29, 5). At the outset, it is important to emphasize that Rule 16 does not entitle a criminal defendant to open-file discovery. *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file."). Instead, under Rule 16(a)(1)(E), the government must disclose case-related records in its "possession, custody, or control" in three circumstances: when the record is material to preparing the defense; when the government intends to use the record in its case-in-chief; or when the record belongs to or was obtained from the defendant. Fed. R. Crim. P. 16(a)(1)(E).

Information is only material to the defense if it is related to the defendant's "response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Establishing materiality requires a defendant to provide "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citation omitted). However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* (citation omitted).

Information is deemed in the prosecution team's "possession, custody, or control," and thus subject to disclosure under Rule 16, if the government either "knows or through due diligence could know" the information exists. *United States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005). "The 'possession' element of *Brady* is treated as coextensive with that of Rule 16." *United States v. Cano*, 934 F.3d 1002, 1023 n.16 (9th Cir. 2019) (citations omitted).

Under Rule 16, the government "has no obligation to produce information which it does not possess or of which it is unaware." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir.

1995). But prosecutors must "disclos[e] what [they] do[] not know but could have learned." *Cano*, 934 F.3d at 1023. "The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).

At times, this obligation extends to information held by other executive branch agencies. "Documents held by another executive branch agency are deemed to be 'in the possession of the government' if the prosecutor has 'knowledge of and access to' the documents." *Cano*, 934 F.3d at 1023. Knowledge of the documents requires that the prosecution knows the requested documents exist. *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("The government has no obligation to produce information . . . of which it is unaware."). While knowledge and access are presumed of an executive agency that "participates in the investigation of the defendant," the government "need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill [its] obligations[.]" *Id.* (quoting *Bryan*, 868 F.2d at 1036). *See also Alahmedalabdaloklah*, 94 F.4th at 844 (rejecting a defendant's argument that *Brady* required government to search for potentially exculpatory documents held anywhere by the Department of Defense); *Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir. 2014) (noting that Ninth Circuit caselaw "stands for the proposition that the federal government's *Brady* obligation does not extend to 'files that were under the exclusive control of [state] officials'"). The government has "no obligation to turn [over] documents maintained by independent third parties who are not part of the investigation team [because t]hese third parties are private entities which are *separate and apart* from the government." *United States v. Lankford*, 10-CR-00398 AWI BAM, 2013 WL 2295988, at *1 (E.D. Cal. May 24, 2013) (emphasis in original).

## III. ARGUMENT

Defendant asks this Court to compel discovery across seven categories. For each category, the government either has no responsive documents to provide, has produced the responsive documents it has, or is in the process of collecting and producing any additional documents of which it is aware.

### a. The government has met its discovery obligation with respect to each of the seven categories of requested discovery.

#### i. Names of percipient witnesses.

The government has produced all documents in its possession, custody, or control that identify percipient witnesses "involved in [defendant's] arrest." The government has requested additional information from the Federal Protective Services regarding the identity of any additional witnesses involved in defendant's arrest and will promptly supplement its discovery with that information.[2]

#### ii. Use of force documentation.

The government has inquired into any "use of force" investigation related to this incident and has identified no documents evidencing a use of force investigation.

#### iii. Documentation of agent's injuries.

The government has inquired into any documents regarding medical treatment or workers' compensation related to injuries sustained by officers in connection with defendant's arrest on July 4, 2025. The government has identified no documents of that nature.

/ / / /

/ / / /

---

[2] As of this filing, the government is aware of the identities of two additional officers involved in defendant's arrest. Reports with those identities, and perhaps additional identifications, are forthcoming. However, the government is willing to informally provide the identities of the two additional officers to defense upon request.

**iv. Documentation of body-worn cameras or the lack thereof.**

The government has inquired into whether any body-worn cameras were used by officers in connection with defendant's arrest on July 4, 2025. The government is not aware of any such cameras being used.

**v. Documentation of civil defense functions performed at the ICE Building on July 4.**

Under 18 U.S.C. § 1362, the government must prove that the defendant "willfully … interfere[d] in any way with the working or use of …any … means of communication … used or intended to be used for … civil defense functions of the United States[.]" The defendant severed a fiber optic cable that provided internet service to the ICE Building. That fiber optic cable, by which internet service is provided to the building, is a means of communication that was used or intended to be used by the Department of Homeland Security for the civil defense functions of the United States.

What qualifies as a civil defense function of the United States is a question of law. The government and defendant may have differing understandings of what qualifies as a civil defense function. For purposes of clarity, the government accepts the definition provided in 44 C.F.R. § 312.2 (defining "civil defense").[3] Courts interpreting the scope of 18 U.S.C. § 1362 have

[3] 44 C.F.R.§ 312.2(c) defines "civil defense" as follows:

> [A]ll those activities and measures designed or undertaken (1) to minimize the effects upon the civilian population caused, or which would be caused, by an attack upon the United States, or by natural disaster, (2) to deal with the immediate emergency conditions which would be created by any such attack, or natural disaster, and (3) to effectuate emergency repairs to, or the emergency restoration of vital utilities and facilities destroyed or damaged by any such attack or natural disaster. Such term shall include, but shall not be limited to, (i) measures to be taken in preparation for anticipated attack or natural disaster (including the establishment of appropriate organizations, operational plans, and supporting agreements; the recruitment and training of personnel; the conduct of research; the procurement and stockpiling of necessary materials and supplies; the provision of suitable warning systems; the construction or preparation of shelter areas, and control centers; and, when appropriate, the non-military evacuation of civil population); (ii) measures to be taken during attack or natural disaster (including the enforcement of passive defense regulations prescribed by duly established military or civil authorities; the evacuation of personnel to shelter areas; the control of traffic and panic; and the control and use of lighting and civil

emphasized that "its scope was intended to be broad." *United States v. Turpin*, 65 F.3d 1207, 1211 (4th Cir. 1995).

There are many publicly-available documents, including statutes, regulations, and policies, that address the mission and function of personnel employed by the Department of Homeland Security, including DHS components such as the Federal Emergency Management Agency (FEMA) and the Cybersecurity & Infrastructure Security Agency (CISA).[4] Beyond its obligation to identity any such documents that it intends to rely on in its case-in-chief, the government is unaware of any discovery obligations it has to defense regarding such publicly-available materials.

At this time, the government has produced, or will shortly produce, all non-public and discoverable information in the government's possession, custody, or control that bears on the issue of the civil defense functions that the communications line to the ICE Building were used or intended to be used to facilitate.

**vi. Documentation of the cost to the government for repair of the fiber optic cable.**

The government has previously provided defendant with documents regarding the costs involved in the repair of the fiber optic cable. *See* McCarthy_0000155-57. The government does not have any documentation reflecting DHS paying Comcast for those repairs because, to the government's knowledge, no such payment was made.

---

communications); and (iii) measures to be taken following attack or natural disaster (including activities for firefighting; rescue, emergency medical, health and sanitation services; monitoring for specific hazards of special weapons; unexploded bomb reconnaissance; essential debris clearance; emergency welfare measures; and immediately essential emergency repair or restoration of damaged vital facilities)[.]

[4] *See e.g.*, the description of the "Surge Capacity Force" provided at https://www.dhs.gov/surge-capacity-force;

However, the government has notified defendant that it has decided to move to dismiss the depredation of federal property count from the indictment, mooting the need for any additional discovery in this area. The government will instead refer this matter to the Multnomah County District Attorney for potential prosecution.

**vii. Documentation and communications demonstrating the ownership and exclusive control of the fiber optic cable.**

As with the prior request, because the government is dismissing Count 3 of the indictment, further discovery regarding the federal government's ownership and control of the fiber optic cable is now moot. However, in the interest of transparency, the government is producing the documents it had gathered related to the ownership and control of the fiber optic cable. The government does not plan to make any further productions that bear on Count 3.

**b. Defendant's request for an affirmative representation should be denied.**

The government is operating in good faith to satisfy its discovery obligations and to follow where the evidence leads it. For that reason, it has supplemented discovery repeatedly. It has facilitated a site inspection for defense counsel. And it has made a significantly overinclusive production to defendant in an abundance of caution and in the interest of transparency. Under these circumstances, no affirmative representation from the government regarding discovery is necessary.

/ / / /

/ / / /

## IV. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion to compel discovery.

Dated: October 2, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Paul T. Maloney*
PAUL T. MALONEY, OSB #013366
JAMES A. KILCUP, OSB #173891
Assistant United States Attorneys