Clais Daniels-Edwards, NJ 115122015
Assistant Federal Public Defender
Email: clais_daniels-edwards@fd.org
Michael Charles Benson, AK 1311070
Assistant Federal Public Defender
Email: michael_benson@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone

Attorneys for Mr. McCarthy

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IAN JOSEPH MCCARTHY,<br><br>Defendant. | Case No. 3:25-cr-00292-IM-1<br><br>MOTION TO DISCLOSE GRAND JURY TRANSCRIPTS |

**Introduction**

Mr. McCarthy, through undersigned counsel, hereby moves the Court for an order to disclose grand jury transcripts pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E). Under that rule and governing Ninth Circuit law, disclosure of transcripts is warranted to support a motion to dismiss Counts 4 and 5 of the indictment, which charge Mr. McCarthy with damaging communication lines impacting the United States' civil defense functions and escape, respectively, and to allow the defense to challenge any variance between the theory presented to

the grand jury and that presented at trial as to those counts. As set out below, the defense can show a particularized need for the grand jury transcripts based on the facts of this case, the wording of the indictment, and the government's apparently shifting theories of prosecution.

**Factual and Procedural History**

This case involves an incident related to protests near the Immigration and Customs Enforcement (ICE) facility on July 4, 2025. Mr. McCarthy was originally charged via complaint with assaulting a federal officer and depredation of federal property. The complaint alleged that Mr. McCarthy used bolt cutters to cut a fiber optic cable leading to the ICE facility. Following his identification, agents surrounded Mr. McCarthy to arrest him. They alleged he took a fighting stance and punched and kicked agents who suffered no visible injuries. The complaint alleged that an (unknown) agent placed Mr. McCarthy in flexicuffs, and on the way back to the building he slipped the cuffs, tried to run but fell to the ground and was re-cuffed with metal handcuffs.

Mr. McCarthy was later indicted on five counts:

Counts 1 and 2 – Assaulting a federal officer involving physical contact, in violation of 18 U.S.C. § 111(a)(1),

Count 3 – Depredation of government property, in violation of 18 U.S.C. § 1361

Count 4 –Damaging communication lines impacting the civil defense functions of the United States, in violation of 18 U.S.C. § 1362; and

Count 5 – Escape from custody, in violation of 18 U.S.C. § 751(a).

Pretrial litigation has raised questions about the government's theory of prosecution regarding Counts 3, 4, and 5. For example, in response to a defense motion to compel discovery regarding the civil defense functions carried out at the ICE building, as relevant to Count 4, the government invoked the definition of "civil defense" in 44 C.F.R. § 312.2, which relate to "an attack upon the United States" or "natural disaster." ECF 34 at 7 n.3. The government referred

the defendant to "publicly-available documents" that it claimed would identify the civil defense function carried out in the ICE building. ECF 34 at 8.

Similarly, with respect to Count 3 and 4, the defense moved to compel discovery regarding the government's ownership and control of the damaged fiber optic cable, noting that Comcast claimed to own the cable. ECF 29 at 4. In response, the government acknowledged that the Department of Homeland Security had not paid for the cable repair, and the government subsequently moved to dismiss Count 3. ECF 34 at 8–9; ECF 35. The government later conceded that "the terms of the Comcast agreement made it quite clear that Comcast maintains exclusive control over the fiber optic cable." 10/7/26 Hearing Tr. at 6–7.

The dismissal of Count 3 and the shifting theory of prosecution on Count 4 impact Count 5, the escape charge, as well because the indictment alleges that the custody from which Mr. McCarthy escaped was "by virtue of his lawful arrest for the felony offenses as alleged in Counts 1, 2, 3, and 4 herein." The validity of the Count 3 and 4 charges, therefore, impacts the basis for custody in Count 5.

## Argument

### I. Grand jury transcripts should be disclosed to the defendant when there are grounds for a motion to dismiss the indictment based on the grand jury proceedings or the defendant makes another showing of particularized need.

Disclosure of the transcripts of grand jury proceedings is within the "sound discretion of the trial court." *United States v. Murray,* 751 F.2d 1528, 1533 (9th Cir. 1985). Rule 6(e)(3)(E)(i)–(v) of the Federal Rules of Criminal Procedure identifies the circumstances in which disclosure is authorized, including "preliminarily to or in connection with a judicial proceeding," and "at the request of a defendant who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i), (ii); *see United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

Disclosure requires a showing of particularized need that outweighs the policy of grand jury secrecy. *Walczak*, 783 F.2d at 875. That showing is satisfied when (1) the material sought is needed "to avoid a possible injustice in another judicial proceeding," (2) the need for disclosure outweighs the need for continued secrecy of the material, and (3) the request is framed narrowly to cover only the needed material. *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979). In assessing need, courts should defer to "defense counsel's special familiarity with a given prosecution." *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994). Thus, in lieu of *ex parte* review, the Ninth Circuit in Fowlie commented that "it may be advisable for the district court to order disclosure and allow defense attorneys to brief the issue of prejudice."

Disclosure of grand jury transcripts can be critical to a defendant's ability to ensure the integrity of criminal prosecutions. The grand jury right established in the Fifth Amendment provides a critical check on all felony prosecutions. The grand jury stands as a "protective bulwark" between "the ordinary citizen and an overzealous prosecutor." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). To fulfill its mandate, a grand jury must function as "an investigative body 'acting independently of either prosecuting attorney or judge.'" *Id.* at 16 (quoting *Stirone*, 361 U.S. at 218).

Therefore, the instructions given to the grand jury cannot be "flagrantly misleading" and must "at least impl[y] all of the elements" of the charge. *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989). Additionally, an indictment "may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 216 (1960).

And a defendant may not be "tried on charges that are not made in the indictment against [her]." *Id.* at 217 (citing *Ex parte Bain*, 121 U.S. 1, 13 (1887)). Such variation would "[destroy] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Stirone*, 361 U.S. at 217. Even without formal amendment of the indictment, permitting the government to proceed on a different theory than that which the grand jury returned indictment upon creates the same effect. *Id.* Such "variation between pleading and proof" results in a "deprivation of such a basic right . . . [that it is] far too serious to be treated as nothing more than a variance and then dismissed as harmless[.]" *Id.*

**II. The grand jury transcripts may provide grounds for a motion to dismiss Count 5, escape, based on improper instruction or evidence because the statute requires "a charge of a felony," but no felony charges existed when Mr. McCarthy allegedly escaped.**

Count 5 charges Mr. McCarthy with escape in violation of 18 U.S.C. § 751(a). The indictment alleges that "[o]n or about July 4, 2025," Mr. McCarthy "did knowingly escape and attempt to escape from custody of an officer of the United States wherein he was held by virtue of his lawful arrest for the felony offenses as alleged in Counts 1, 2, 3, and 4 herein[.]" ECF 1 at 3. Thus, the indictment alleges that the basis for custody was Mr. McCarthy's arrest on the felony offenses later charged in the indictment. However, Mr. McCarthy had not been charged with any crime on July 4, 2025. A complaint was filed the following day, on July 5, 2025, and the indictment was filed ten days later, on July 15, 2025.

The government may argue that there is no infirmity in the indictment because § 751(a) requires only a felony arrest, not a pending felony charge. That position is not supported by the statutory text. Statutory construction must always start with the text of the statute. *E.g.*, *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023); *Lamie v. United States Trustee*, 540 U.S. 526,

534 (2004). "Only the written word is the law and all persons are entitled to its benefit." *Bostock v. Clayton County*, 590 U.S. 644, 653 (2020).

Here, § 751(a) reads in full:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, **if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense**, be fined under this title or imprisoned not more than five years, or both; or **if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction**, be fined under this title or imprisoned not more than one year, or both.

(Emphasis added). The two bolded provisions of the statute differentiate between two separate offenses—a felony offense and a misdemeanor offense—that depend on the basis for custody. A felony escape occurs when a defendant escapes from custody "by virtue of an arrest on a charge of felony." But when the custody is by virtue of "an arrest" in any other circumstance, the statute allows for only misdemeanor liability.

An "arrest on a charge of felony" should be construed to mean what it says: an arrest after having been formally charged with a felony. When used as a noun, as it is in § 751(a), Black's Law Dictionary defines a "charge" as "[a] formal accusation of an offense as a preliminary step to prosecution." Black's Law Dictionary, 282 (10th Ed. 2009). The Cambridge Online Dictionary similarly defines a charge as the act of making "a formal statement" accusing someone of a crime.[1]

---

[1] Available at https://dictionary.cambridge.org/dictionary/english/charge.

Requiring arrest on a formal felony charge gives effect to every word in the statute. *Miller v. United States*, 363 F.3d 999, 1008 (9th Cir. 2004). The statute does not simply say "arrest on a felony" or "arrest for a felony," as would naturally encompass an officer's probable cause arrest for a felony offense. Instead, by referring to "an arrest *on a charge of* felony," the text makes clear that the charge must exists beyond the arrest itself. As an example, if an officer arrested an individual based on probable cause that they robbed a bank, it would be more natural to say the officer arrested that person "for bank robbery" rather than "on a charge of bank robbery." But an arrest on a charge of bank robbery requires that the arrest be made on a formal accusation—a complaint or indictment in federal court—of bank robbery.

That reading also accounts for the distinct wording of the felony arrest clause as compared to the misdemeanor arrest clause. The felony arrest clause covers "an arrest on a charge of felony," whereas the misdemeanor clause covers "an arrest **or** charge of **or** for a misdemeanor[.]" (emphasis added). "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings[.]" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately."). The disjunction between "arrest" and "charge of" separates those as different theories for committing a misdemeanor escape. First, it is a misdemeanor violation to escape from any "arrest." Second, it is a violation to escape from a "charge of or for a misdemeanor." Misdemeanor escape therefore covers custody by virtue of *any* lawful arrest, as well as custody on formal misdemeanor charges.

While considering a different legal issue, the Seventh Circuit construed the statute in precisely this way. The court diagrammed a former version of the statute as follows:

> shall, if the custody or confinement is by virtue of (5) an arrest on a charge of felony, or (6) conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is (7) for extradition or by virtue of (8) an arrest or (9) charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

*United States v. Richardson*, 687 F.2d 952, 955 (7th Cir. 1982). The Seventh Circuit viewed "an arrest"—referred to as category (8)—as a completely self-contained theory of culpability, distinct from custody that falls in categories (5), (6), (7), or (9).

The Fifth Circuit also approached the statute in the same way in *Theriault v. United States*, 434 F.2d 212 (5th Cir. 1970). There the defendant had been arrested on a "charge of felony," meaning an indictment. *Id*. at 213. But the indictment was for embezzlement and did not include the actual value of the embezzled items in the charging instrument as required for a felony charge. *Id*. at 214. The Fifth Circuit did not look to the underlying facts of the case to answer the question of whether the arrest was on a "charge of felony." Instead, it looked to the face of the indictment. *Id*. Because the charging instrument itself failed to allege the value required to make the charge a felony, the court concluded that the defendant could only be convicted of a misdemeanor.

The overall structure of § 751(a) also confirms Mr. McCarthy's proposed construction. The escape statute distinguishes the severity of an escape based, in part, on the level of process that has occurred. Prior to conviction, an escape from custody on a misdemeanor charge is only a misdemeanor. But after conviction, even for a misdemeanor, an escape from custody becomes a felony. Similarly, an escape from an arrest where no charges have been filed is a misdemeanor,

even when the arrest is for a felony offense. But, once formal felony charges are filed, escape becomes a felony.

Failing to uphold this distinction would collapse conduct that differs in severity. The mine-run escape case involves an escape from a prison or halfway house. Individuals who are confined to a prison or halfway house are confined pursuant to a judgment and commitment order, and their escape involves a defiance of formal court proceedings. So too, an individual who attempts to escape arrest after having been formally charged with a felony attempts to evade the formal processes that initiated the prosecution and authorized the detention. An individual who has not been charged simply does not attempt to evade court processes in the same way.

The need to hew closely to statutory text is particularly important in criminal cases where freedom is on the line and due process protections are at their peak. *See United States v. Davis*, 588 U.S. 445, 464 (2019) ("Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe."). Since this country's founding, penal laws have been strictly construed against the government. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 434 (2024) (Gorsuch, J., concurring). The rule of lenity "upholds due process by safeguarding individual liberty in the face of ambiguous laws. And it fortifies the separation of powers by keeping the power of punishment firmly in the legislative, not in the judicial department." *Id.* at 434–45 (simplified).

Here, § 751(a) establishes only two categories of custody that allow a prosecution for felony escape: (1) arrest on a charge of felony; or (2) conviction. In this case, neither basis existed because formal charges had not been filed at the time of Mr. McCarthy's arrest. Absent

formal charges, the grand jurors could not have received valid evidence that Mr. McCarthy was arrested on a charge of a felony, let alone the specific felony charges in Counts 1 through 4 that the grand jury itself was considering. Accordingly, Mr. McCarthy has made a showing that the grand jury transcripts will support a showing that the grand jurors were not properly instructed on the elements of escape.

## III. There is likely to be a variance between the theory submitted to the grand jury and the trial evidence as to Count 4, damaging communication lines, regarding the civil defense function the cable was used for.

In Count 4, the government charged Mr. McCarthy under 18 U.S.C. § 1362 with damaging communication lines used for civil defense functions of the United States. The operative statutory provision reads:

> Whoever willfully or maliciously injures or destroys any of the works, property, or material of any radio, telegraph, telephone or cable, line, station, or system, or other means of communication, **operated or controlled by the United States**, or **used or intended to be used for military or civil defense functions of the United States**, whether constructed or in process of construction, or willfully or maliciously interferes in any way with the working or use of any such line, or system, or willfully or maliciously obstructs, hinders, or delays the transmission of any communication over any such line, or system, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than ten years, or both.

(Emphasis added).

In Count 4, the indictment alleges a violation of § 1362 on two distinct theories: (1) that the cable was "operated and controlled" by the United States, and (2) that the cable was "used and intended to be used for civil defense functions of the United States." ECF 1 at 2. As the government now concedes, the fiber optic cable in question was controlled by Comcast, not the United States. That means only the second theory is now available in this case.

In its pleadings, the government has adopted a definition of "civil defense" from a regulation that was written approximately two decades after the enactment of the relevant language in 18 U.S.C. § 1362. *See* 47 Fed. Reg. 43380-02 (1982). Even if applicable, neither immigration enforcement nor ordinary law enforcement—the two primary functions carried out in the ICE facility—fall within that definition.

In pretrial litigation, it is apparent that the government's theory of civil defense has shifted since it presented the case to the grand jury. At the October 7, 2026, motion hearing, the government did not contend that immigration enforcement is a civil defense. Rather, it explained its current theory that some of the people working at the ICE facility were "members of FEMA's Surge Capacity Force" who could be called up by FEMA to aid in the event of a national emergency. 10/7/26 Hearing Tr. at 22–23. If that happened, they "would have been contacted through the internet," specifically through the Comcast fiber optic cable, "to mobilize them as personnel to respond to a disaster. *Id.* at 23.[2]

The government agreed that it had not yet produced discovery concerning the witnesses who would testify to that civil defense function because they had been contacted only recently in response to defense discovery requests:

[2] The theory that "civil defense" includes any communication line that FEMA may use to activate its "surge" force is exceptionally broad. Under that theory, the home internet connection of any DHS employee who might be "surged" in the future would also be covered, even if was not being used for that purpose at the time. Even the Wi-Fi at a nearby Starbucks could be a communication line "intended" for civil defense under that definition.

THE COURT: And have those names been turned over?
MR. KILCUP: Not all of them, but they will be by Friday.
THE COURT: Is there a reason that they haven't been?
MR. KILCUP: So as -- as the defense pushed in discovery on the question of "What are the civil defense functions that are being performed?" we thought a little bit about that and contacted some individuals at FEMA, who I think would be able to testify to how they will be using those communication lines, and so we think they're probably best positioned to provide that testimony. That's happened relatively recently, and so that's -- that's the part that I need to -- the Court's instruction is to get that to defense by Friday, and that's what we'll be using as part of this theory.

10/7/26 Hearing Tr. at 24.

This Court acknowledged that the late discovery likely reflected the government's failure to consider its theory of prosecution before indictment, commenting: "I would encourage the Government to be more thorough before they go to grand jury so they know exactly what theory they're charging and not figure it out later, which appears to be a little bit of the case here[.]" 10/7/26 Hearing Tr. at 28.

Thus, it appears that the government had not considered what proof to offer regarding the civil defense functions of the ICE facility until after Mr. McCarthy filed a motion to compel

discovery, some fifteen months after the case was presented to the grand jury, or at least that it changed theories after indictment.[3] If the current theory—that the cable was part of the U.S. civil defense function because it may be used to communicate with government employees who ordinarily operate in non-civil defense roles—is presented at trial but was not presented to the grand jury, Mr. McCarthy should have the grand jury transcripts available to protect against a material variance or constructive amendment of the indictment.

### IV. There is likely to be a variance between the theory submitted to the grand jury and the trial evidence as to Count 5, escape, regarding the basis for Mr. McCarthy's custody.

The basis for a defendant's custody is an essential element of escape under § 751(a) and must be alleged in the indictment. *Richardson*, 687 F.2d at 958; *accord United States v. Vanover*, 888 F.2d 1117, 1121 (6th Cir. 1989). Here, Count 5 alleges that Mr. McCarthy was held "by virtue of his lawful arrest for the felony offenses as alleged in Counts 1, 2, 3, and 4 herein[.]" ECF 1 at 3. Thus, even setting aside the requirement of a formal felony charge, the indictment offers four alternative bases for Mr. McCarthy's custody, and its trial theory must establish that at least one of those grounds is legally and factually viable. However, there are problems with each theory, and thus a risk that the government will vary from its grand jury theory, supporting disclosure of the grand jury minutes.

First, the assaults alleged in Counts 1 and 2 are unlikely to be offered at trial as the basis for the escape charge because those offenses were alleged to have occurred *during the course of* Mr. McCarthy's arrest. They were not the basis for the arrest itself. If the government argues at

[3] Because the indictment alleged "operated or controlled" in addition to "civil defense functions," the grand jury may have been erroneously informed that the cable was a government property, using the same evidence as was offered in supported of the now-dismissed Count 3.

trial that the escape occurred *after* Mr. McCarthy was supposedly in custody specifically for those assaults, that is potentially a new factual theory that may not have been presented to the grand jury.

Second, with respect to the offenses later charged in Counts 4 and 5, it is clear that the conduct underlying those charges was the basis for his initial detention. He was originally arrested for damaging the fiber optic cable. But that fiber optic cable was not government property or under government control. Because the fiber optic cable was actually owned by Comcast, not the government, the jury was likely either incorrectly instructed about this element or presented false or misleading information in support of the indictment. Disclosure of the grand jury transcripts will be necessary for the defense to enforce Mr. McCarthy's right to be tried on a theory that was presented to the grand jury. *Dionisio*, 410 U.S. 1 at 17.

**Conclusion**

For the aforementioned reasons, we request the Court issue an order requiring the government to unseal and disclose the grand jury proceedings.

DATED: November 6, 2026.

*/s/ Clais Daniels-Edwards*
Clais Daniels-Edwards, NJ 115122015

*/s/ Michael Charles Benson*
Michael Charles Benson, AK 1311070